**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2862-WJM

SEAN MELODY,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Sean Melody ("Plaintiff") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner") denying his application for disability

and social security benefits.  The denial was affirmed by an administrative law judge

("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security

Act ("Act").  This appeal followed.

For the reasons set forth below, the ALJ's denial of benefits is reversed and the

case is remanded to the Commissioner for rehearing.

## I.  BACKGROUND

Plaintiff applied concurrently for Title II and Title XVI benefits on September 3,

2009, alleging disability as of April 1, 2009.  (Admin. Record ("R.") at 55.)  By notice

dated May 19, 2010, Plaintiff's application was denied. (R. 87.)  On June 3, 2010,

Plaintiff filed a request for an administrative hearing. (R. 98.)  On February 10, 2011, a

hearing was held before Administrative Law Judge ("ALJ") Kathryn D. Burgchardt.  (R. 9.)  By hearing decision dated June 1, 2011, the ALJ denied Plaintiff's application for disability benefits.  (*Id.*)  Plaintiff timely filed a request for Appeals Council review on June 16, 2011.  (R. 7.)  On August 31, 2012, the Appeals Council denied Plaintiff's request for reversal or remand and thereby adopted the ALJ's decision as the final decision of the Commissioner.  (R. 1.)  Plaintiff timely filed this appeal.  (R. 7.)

### A.    Background and Medical Evidence

Plaintiff was born on February 20, 1974. He has a high school education with two years of college, which he completed in 1993.  (R. 204.)  He has a work history for the last 15 years performing at or above substantial gainful activity levels in the employment roles of executive chef, cook, and supervisory sous-chef.  (R. 50.)

On September 8, 2008, Plaintiff presented to the Emergency Room at Memorial Health System with complaints of head pain and right lateral neck pain after he was hit in the head with a tray of frozen meat at work.  (R. 276.)  The tray of meat weighed seventy-five pounds.  (*Id.*)  The emergency room physician diagnosed Plaintiff with an acute head contusion and prescribed Percocet and Flexeril.  (R. 268.)  On September 11, 2008, Mary Dickson, M.D. released Plaintiff to return to work, but restricted him to a four hour work-day with no walking or standing longer than 10 minutes per hour, occasional lifting up to 10 pounds, occasional use of hands to push/pull, and no bending, squatting, climbing, or reaching. (R. 289.)

Plaintiff underwent a Physical Therapy Evaluation on September 12, 2008, in which he was noted to have significant neck pain 100% of the time, reduced cervical spine range of motion, and tenderness in the right upper C-S paraspinals.  (R. 291.)

2

On January 24, 2009, Plaintiff was transported by ambulance to the St. Francis Medical Center following a suicide attempt via overdose where he was found lying on the floor with a suicide note by his side.  (R. 331.)  Plaintiff was diagnosed with major depressive disorder, recurrent and unspecified, assigned a GAF of 20 and was legally held until January 26, 2009. (R. 337-338.)  Three months later, on April 2, 2009, Plaintiff again presented at the emergency room at St. Francis Medical Center on April 2, 2009 for treatment following three grand mal seizures that day and a residual headache. (R. 340.)  He was diagnosed with seizures and released.  (R. 345.)

On April 9, 2009, William Herrera, M.D. at Colorado Springs Neurological Associates evaluated Plaintiff for seizures.  (R. 380.)  Plaintiff reported that he has epilepsy with petit mal and grand mal seizures between 21 and 27 years of age, but no seizures from age 28 until recently.  (*Id.*)  After seizures, Plaintiff reported that he has a headache and is extremely tired. (*Id.*)  Plaintiff had been taking Dilantin for one week, but reported no difference in his seizure activity.  Dr. Herrera diagnosed Plaintiff with Epilepsy NOS without intractable epilepsy. (R. 381.)

Dr. Herrera examined Plaintiff again on April 24, 2009.  Plaintiff reported that he continued to have seizures, but less frequently with only a few episodes a week of blacking out for two to five minutes with incontinence and drooling. (R. 382.)   Dr. Herrera opined that Mr. Melody's seizures could be related to his recent head injury and amended his previous diagnosis to epilepsy, unspecified, with intractable epilepsy. He discontinued Mr. Melody's Dilantin and continued him on Lamictal. (*Id.*)

On December 29, 2009, Douglas E. Helmer, M.D. conducted an independent medical evaluation of Plaintiff.  He complained of frequent seizures, migraines, blurred

3

vision, dizziness, neck pain, and loss of disc severity and focus in both upper

extremities. (R. 389.) An examination demonstrated numbness and paresthesias into

the upper extremity with blackouts and fainting spells, frailty, slow mental processing,

symmetrically reduced mass and tone through the upper extremities, and nonfocal

tenderness in the cervical and upper thoracic region primarily consistent with myofascial

pain. (R. 390.) Dr. Helmer noted that only a limited number of medical records were

provided to him at the time of the exam and diagnosed Plaintiff with possible

post-concussion syndrome related to the March 8, 2008, work-related injury and seizure

disorder he felt was related to the work-related injury. (*Id.*)

On April 21, 2010, Plaintiff underwent a Psychological Consultative Evaluation

with Victor Neufeld, Ph.D. Plaintiff reported he was experiencing seizures two or more

times per week, blurred vision, blackouts, migraines, and lapses in concentration.

Plaintiff also reported that he needs help taking a shower, had to stop driving, and is

sometimes unable to get out of bed 25% of days in a month. Plaintiff reported losing

teeth and dislocating his shoulder, knees, and hips during seizures. (R. 394.) He

described the frequency of his seizures as two to three times per week and estimated

that he has anywhere from eight to seventy seizures per month. (R. 395.)

Plaintiff reported experiencing "almost constant migraines" that affect his vision,

which were rated a seven out of ten on the pain scale. (R. 396-397.) Dr. Neufeld noted

that Plaintiff walked with a limp, that his mood was flat, that he admitted being

depressed, sad, fatigued, and hopeless. Plaintiff admitted having difficulty

concentrating, feeling hopeless and irritable, and having racing thoughts. Dr. Neufeld

reported that Plaintiff endorsed 6 items on the Mood Disorder Questionnaire that are

4

consistent with mania.  (R. 397.)  Plaintiff stated he is anxious about going out in public where he might have a seizure and lose control of his bowels. (*Id.*)  Dr. Neufeld diagnosed Plaintiff with rule out dissociative episodes, major depression mild, rule out bipolar disorder, rule out personality change due to brain injury, anxiety disorder NOS with features of PTSD and panic, pain disorder with psychological factors, seizures, depression, and reduced functional abilities. He assigned a GAF score of 45. (R. 399.)

On May 19, 2010, Timothy Hall, M.D., evaluated Plaintiff.  (R. 566)  Dr. Hall also conducted a thorough review of Mr. Melody's medical records and medical history, including his work-related head injury that occurred on September 8, 2008.  *(Id.*)  Dr. Hall concluded that Plaintiff has postconcussive syndrome and a seizure disorder and was not at maximum medical improvement.  Specifically, Dr. Hall diagnosed Plaintiff with post-concussive symptomology, probably absence/petit mal seizures, post-traumatic vision syndrome, cognitive impairments related to post concussive symptomology, and mixed headache syndrome related to myfascial issues as well as post-traumatic headache.  Dr. Hall noted that some of this headache may be related to vision problems. (*Id.*)

On June 21, 2010 Peter Quintero, M.D.**,** conducted a neurological evaluation on Plaintiff for the purpose of workers compensation at the request of the insurance company. (R. 439.)  Based on examination and review of Plaintiff's records, Dr. Quintero concluded that it was highly unlikely that Plaintiff sustained a significant brain injury as a result of his work-related accident on September 8, 2008. Dr. Quintero also concluded that Mr. Melody's ongoing neurological problems are not a direct result of his

work-related injury. (R. 452.)

On August 4, 2010, Edwin Healey, M.D., conducted an independent medical evaluation of Mr. Melody.  Plaintiff reported to Dr. Healey that he experiences daily seizures and chronic right front to temporal headaches that are associated with nausea, vomiting, light sensitivity, and noise sensitivity.  (R. 524.)  Plaintiff also complained of intermittent vertigo that lasts from five to twenty seconds, decreased visual acuity and intermittent blurry vision, and neck pain. (R. 525.)

Plaintiff admitted being depressed and anxious with episodes of hyperventilation, shortness of breath, chest pain, claustrophobia, irritability, decreased concentration, memory problems, and feeling that he was going to die.  (*Id.*) At the time of the examination, Plaintiff was taking Dilantin, Lovaza, Flexeril, Vicodin, and a Vitamin D supplement. (R. 526.)

Dr. Healey noted Plaintiff had marked difficulty cooperating with the optokinetic tape test because of complaints of nausea and dizziness.  Dr. Healey noted that after the neurological and physical examinations were complete, Plaintiff complained of feeling lightheaded and dizzy with the onset of a headache. (R. 528.)  As Plaintiff was getting dressed, Dr. Healey heard a scream from the examining room and witnessed Plaintiff lying on the floor, jerking, and unresponsive to questions.  Dr. Healey described Mr. Melody's condition to include carpal/pedal spasms, jerking of this right upper extremity, with intermittent tonic posturing of his right upper extremity, neck, and upper back. The incident lasted for approximately 90 seconds, after which Plaintiff appeared mildly confused and disoriented.  (*Id.*)  Following this,  Dr. Healey provided a detailed

6

and lengthy report that is incorporated herein.  (R. 516-531.)   Among other things, he recommended that the prior recommendations of Dr. Quitero, the insurance company physician be ignored and stated that Plaintiff does have ongoing severely debilitating problems, some of which were directly caused the September 8, 2008 work injury, and other problems that were preexisting and aggravated.  (R. 531.)

### B.    Opinion Evidence

On May 5, 2010, Thurman F. Hodge, D.O., performed a Physical Consultative Evaluation at the request of the State Agency and noted that no medical records were provided for his review. (R. 401-402.)  On examination, Plaintiff reportedly had mild paravertebral muscle spasm from L1 through L5 on the right, and mild trigger points on the right L1-2. (R. 403.)  Dr. Hodge found that Plaintiff experienced pain with active range of motion of his right shoulder, which was limited to 140 degrees. (*Id.*)  Dr. Hodge was also reportedly unable to determine whether Mr. Melody's reported pain was actual pain or postictal pain related to his seizures and admitted in his opinion statement that "An accurate description of his overall functioning is difficult since there were no medical records provided for review and therefore no support for his reported migraine severity or frequency of seizures."  (R. 404.)  And again, "If his low back pain and right shoulder pain is of concern, he needs an orthopedic evaluation for those."  (R. 405.)  Dr. Hodge wrote further, "He [Mr. Melody] probably needs a current neurological evaluation and his records from Dr. Herrera need to be reviewed."  (*Id.*)

On April 21, 2010, Victor Nuefeld, Ph.D., conducted a consultative psychological evaluation of Mr. Melody. (R. 394.)  Plaintiff complained of epilepsy, blurred vision,

blackouts, migraines, and lapses in concentration. (R. 394)  He reported having two or

more seizures per week, sometimes several per day, migraines, and difficulty

recovering after his seizures.  (R. 394-395.)  Dr. Nuefeld diagnosed Plaintiff with rule out

dissociative episodes, major depression (mild), rule out bipolar disorder, rule out

personality change due to brain injury, anxiety disorder NOS with features of PTSD and

panic, and pain disorder with psychological factors and a general medical condition. (R.

399.)  Dr. Neufeld concluded that Plaintiff does not display any evidence of significant

cognitive impairment on brief assessment, but noted that Plaintiff described significant

disability due to his migraines. (*Id.*)  The examiner also stated "Based on his self-report,

he is extremely impaired with respect to persistence and pace." (*Id.*)  The doctor also

reported and that "Plaintiff needs mental health and medical care.  This may alleviate

some of his difficulties and improve his quality of life as well as function." (*Id.*)  Dr.

Nuefeld also offered a GAF score of 45, indicating severe psychological symptoms. (*Id.*)

Dr. Edwin Healey offered an opinion on August 4, 2010, which read:

"The primary problems that Plaintiff has a result of his September 8, 2008, work injury

are posttraumatic migraine headaches and secondary vertigo which interfere with

attention, concentration and memory and interfere with sleep and activities of daily

living. These problems have secondarily caused depression and have aggravated a

preexisting seizure disorder.  In addition, Plaintiff has developed chronic depression as

a result of a loss of job and his chronic headaches and is severely depressed." (R.

530.)  The doctor added at R. 52:

> Plaintiff does have ongoing severely debilitating problems,
> some of which were directly caused by the September 8,

2008, work injury, and other problems were preexisting but in my opinion aggravated by the September 8, 2008, injury, given the fact that Plaintiff had a good work history and was quite functional up until the September 8, 2008, injury. He needs further evaluation and treatment as recommended above. His chronic cervical, trapezi us and rhomboid myofascial pain need to be treated with trigger point injections with local anesthetic, deep tissue massage and myofascial release. His depression and anxiety need to be evaluated by a psychiatrist and treated by a psychologist.

## C.   ALJ Decision

The ALJ found that Plaintiff was not under a disability within the meaning of the Act from the alleged onset date of April 1, 2009, to the date of the decision. (R. 12.) In reaching her conclusion, the ALJ followed the five-step sequential evaluation process for evaluating disability claims.[1] (R. 13.) *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found that Plaintiff had severe impairments of depression and seizure disorder status post-concussive syndrome, but that Plaintiff's impairments or their combination did not meet or medically equal one of the *per se* disabling impairments in 20 C.F.R. Part 404, Subpart P, Appendix.

In addition, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but had the following nonexertional limitations: Plaintiff would require unskilled work with a specific vocational preparation (SVP) of one or two; should not work in close proximity to coworkers, meaning that the individual could not function as a member of a team; should not have frequent or

---

[1]  The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See*, 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988.)

prolonged direct contact with the public; should avoid unprotected heights, moving

machinery and commercial driving; could frequently perform the postural activities of

climbing, balancing, stooping, crouching, kneeling and crawling; should not climb

ladders, ropes or scaffolds; and could occasionally perform overhead reaching with his

dominant right upper extremity.  (R. 16.)  Finally, the ALJ concluded that, based upon

the testimony of the vocational expert, Plaintiff was capable of making a successful

adjustment to work that existed in significant numbers in the national economy (R. 28.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision on Plaintiff's entitlement to

disability benefits to determine whether substantial evidence in the record as a whole

supports the factual findings and whether the correct legal standards were applied.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence

that a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It

requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district

court "meticulously examines the record as a whole, including anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42

U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in

the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing

the Commissioner's decision, the Court may neither reweigh the evidence, nor

substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621

10

(10th Cir. 2006).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

## III.  ANALYSIS

The Appeals Council denied Plaintiff's request for review on the ALJ's decision. Plaintiff then filed this action seeking review of that decision.  On appeal, Plaintiff raises several issues for consideration: (1) that the ALJ's findings do not include all of the limitations contained in the medical opinions that were adopted by the ALJ; (2) that the ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations; and (3) that the vocational expert's testimony is not based on substantial evidence.  (ECF No. 17 at 23.)

Because the Court finds that the ALJ's findings were not supported by substantial evidence, by *not* addressing all the limitations contained in the medical opinions that were adopted by the ALJ, the Court finds that this error requires remand.  Since these same limitations tainted the second and third issues, the Court also finds that these issues warrant remand.

### A.    RFC Not Supported by Substantial Evidence

Plaintiff attacks the ALJ's RFC findings by contending that the ALJ gave considerable weight to the opinions of Dr. Neufeld and Dr. Hodge, but failed to consider all of their evidence for the purposes of the RFC determination.  (ECF No. 17 at 24-26.)

The RFC assessment is made by the ALJ "based on all the relevant evidence in

[the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment

of the most a claimant can do despite his or her limitations. *Id.* Examples of the types of

evidence required to be considered in making an RFC assessment are the claimant's

medical history, medical signs and laboratory findings, and medical source statements.

Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings

based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92

F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion,
> citing specific medical facts . . . and nonmedical evidence . .
> . the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting
> on a regular and continuing basis . . . and describe the
> maximum amount of each work-related activity the individual
> can perform based on the evidence available in the case
> record. The **adjudicator must also explain how any
> material inconsistencies or ambiguities** in the evidence in
> the case record were considered and resolved.

SSR 96–8p. (emphasis added.)

The ALJ's findings regarding the RFC must be supported by substantial

evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ's RFC is as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform a full range of work at all
> exertional levels but with the following nonexertional
> limitations: claimant would require unskilled work with a
> specific vocational preparation (SVP) of one or two; should
> not work in close proximity to coworkers, meaning that the
> individual could not function as a member of a team; should
> not have frequent or prolonged direct contact with the public;
> should avoid unprotected heights, moving machinery and
> commercial driving; could frequently perform on the postural

> activities of climbing, balancing, stooping, crouching, kneeling and crawling; should not climb ladders,[2] ropes or scaffold sand could occasionally perform overhead reaching with his dominant right upper extremity.

(R. at 16.)  Plaintiff challenges the ALJ's determination on the basis RFC finding did not accurately reflect the opinions of Dr. Neufeld and Dr. Hodge.  The ALJ stated that she assigned "great weight" to the opinions of both these physicians. (R. at 20).

### 1.   Dr. Neufeld's Evidence

Plaintiff asserts that the ALJ omitted Dr. Neufeld's limitation noting Plaintiff's GAF score of 45.  Because of this omission, among others, Plaintiff contends that the ALJ erred in its RFC determination.  (ECF No. 17 at 24-26.)

Here, the ALJ's omission of the GAF score (45) is surprising—particularly in circumstances where "great weight" has been afforded to Dr. Neufeld's opinion in the decision.  (R. at 20.)   The omission of the GAF score is even more telling because Plaintiff's counsel makes direct reference to the score all within the first few minutes of the hearing before the ALJ on February 10, 2011.  In particular, and at R. 32, there is little doubt that the low GAF score of 45 is a central plank in Plaintiff's oral argument before the ALJ that he is disabled for the purposes of satisfying the statutory

---

[2]  As a threshold concern, the Court notes that facial deficiencies in the RFC summary exist.  Specifically, and on the one hand, the RFC states that Plaintiff "should avoid unprotected heights" and that he "should not climb ladders"; but on the other, the RFC states that Plaintiff could "frequently perform the postural activities of climbing, balancing, stooping, crouching, kneeling and crawling.  (R. 16.) Upon remand, this inconsistency should be reconciled by the ALJ.

requirements under the Act.[3] [4]

The Court finds that without discussing the GAF score, the omission becomes substantively deficient for two reasons. The first is, "[a]n ALJ is not entitled to pick and choose through medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). By omitting the low GAF score, yet relying upon other portions of Dr. Neufeld's opinion favorable to a non-disabling finding, the ALJ's analysis becomes a classic case of cherry-picking. Indeed, it is this very abbreviated analysis that Tenth Circuit in its relevant decisions seeks to guard against so to promote a fully developed record for review. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *see also Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012).[5]

Second, the Court finds that the ALJ omitted not only Plaintiff's low GAF score, but also other portions of Dr. Neufeld's opinion that supported a disability finding. Specifically, Dr. Neufeld noted that Plaintiff was "extremely impaired with respect to with

---

[3] This view is predicated on the fact that a GAF score of 45— according to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)—is indicative of serious symptoms for depression, including suicidal ideation.

[4] The GAF score must also be viewed against the evidence as a whole. Specifically, on January 24, 2009, Plaintiff attempted suicide via overdose. (R. 331) Plaintiff was diagnosed with major depressive disorder, recurrent and unspecified, assigned a GAF of 20. (R. 337-338)

[5] The Court notes that the Commissioner did not meet Plaintiff's contention that ALJ must not "pick and choose" medial opinion evidence that is favorable to a non-disability finding. *Haga*, 482 F.3d at 1208. Nor did the Commissioner deal with the issue that cherry-picking in the context where great weight has been afforded to an opinion. In the Court's view, when great weight is given to an opinion, the mandate that the ALJ must not pick choose becomes even more important because evidence against disability is given heightened emphasis, leaving equally weighty evidence in favor of disability by the wayside.

respect to persistence and pace."[6]  (R. 399).   This serves as a further example of

cherry-picking, which constitutes error.  *Robinson*, 366 F.3d at 1083.

But what's more, and without addressing these materials facts, the ALJ failed to

analyze how such facts could be reconciled with that of others doctors in the record who

either (1) supported a finding of disability (for example Dr. Healey's report at 561-528)

or (2) cut against a finding of disability (for example Dr. Quintero at R. 452).  By failing

to reconcile this evidence, the Court finds that the ALJ has failed in her basic duty to

fully and fairly develop the record.  *See Winfrey*, 92 F.3d at 1023; *see Baca*, 5 F.3d at

480 (stating that the ALJ also has a basic duty of inquiry to "develop the record as to

material issues").

In sum, the Court holds that the ALJ's omission of critical and relevant portions of

Dr. Neufeld's opinion (after affording it "great weight"), tainted the ALJ's final

determination.  Not only did this failure prevent factual development of the record, but

the Court finds that remand is warranted because there is a lack of substantial evidence

to support the RFC finding as material portions of medical opinion absent without

_____

   [6]  The Commissioner notes that this statement is out of context—*i.e.*, that Dr. Neufeld prefaced the clause "he is extremely impaired with respect to with respect to persistence and pace" with "Based on [Plaintiff's] self report".  (R. 399.)  But to take context one step further at R. 399, both clauses have been stated at the end of Dr. Neufeld's report—*i.e.*, in the 'Discussion and Recommendation' section. Five pages of questionnaire and testing had preceded this section. This suggests the section summarizes his opinion.  What's more, had Dr. Neufeld sought to disavow Plaintiff's "self report" why not expressly say so?  The fact that the report also provides a low GAF score of 45, along with the final paragraph of the report stating that Plaintiff "needs mental health and medical care" would also tend to suggest that Dr. Neufled was adopting that position.  At best, there is a clear ambiguity that the ALJ should have reconciled by obtaining fresh evidence on this issue or further questioning of Dr. Neufled himself to fully and fairly develop the record.  The fact that the ALJ did not do this, alone, constitutes error. *See Baca,* 5 F.3d at 480; see also *Winfrey*, 92 F.3d at1023 (stating that "the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were resolved.").

explanation in the ALJ decision.  *See generally Flaherty*, 515 F.3d at 1070 (stating that

a district court "meticulously examines the record as a whole, including anything that

may undercut or detract from the ALJ's findings in order to determine if the substantiality

test has been met.")

### 2. Dr. Hodge's Evidence

With respect to Dr. Hodge, the ALJ has also erred.  Specifically, Dr. Hodge

stated in his opinion that "[a]n accurate description of [Plaintiff's] overall functioning is

difficult since there were no medical records provided for review and therefore no

support for his reported migraine severity or frequency of seizures." (R. 404).  It was

further stated that, "[i]f his low back pain and right shoulder pain is of concern, he needs

an orthopedic evaluation for those." (R. 405)  Dr. Hodge wrote further, "he [Plaintiff]

probably needs a current neurological evaluation and his records from Dr. Herrera need

to be reviewed." (*Id.*)  Plaintiff points out that this evidence was not addressed by the

ALJ in the decision, despite great weight being afforded to Dr. Hodge's opinion.  Plaintiff

contends that this, too, warrants remand.  The Court agrees.

Here, and without addressing the above evidence in the ALJ decision, the ALJ

has failed to fully and fairly develop the record.  This deficiency is only amplified in

circumstances where the ALJ has afforded much weight to other portions of Dr. Hodge's

evidence.  *See Baca*, 5 F.3d at 480 (stating that the ALJ also has a basic duty of inquiry

to "develop the record as to material issues").

Moreover, the evidence is such that it creates ambiguities as to the severity of

Plaintiff's symptoms with other evidence in the record that indicate that Plaintiff is not

disabled.  (R. 452.)  There is nothing in the record that shows that  the ALJ sought to

reconcile these ambiguities and make good the material holes that exist in the record. This duty rests entirely with the ALJ, and failure to fulfil this duty constitutes reversible error requiring remand for further consideration.  The Court finds as much.  *See White v. Barnhart*, 287 F.2d 907, 909 (10th Cir. 2001); *White v. Barnhart*, 287 F.2d 907, 909 (10th Cir. 2001); *White v. Massanari*, 271 F.3d 1256, 1261(10th Cir. 2001).

Accordingly, the ALJ had no proper reason for omitting portions of Dr. Hodge's opinion from her RFC findings after specifically "adopting" his opinion with respect to exertional and postural activities in the decision.  (R. 20.)   For this reason, and those stated above, the Court finds that the decision warrants remand for further consideration.[7]  *White*, 287 F.2d at 909.

### B.     The ALJ's Hypothetical Questions to the Vocational Expert Did Not Precisely Reflect Plaintiff's Limitations

Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Plaintiff's mental limitations.  (ECF No. 17 at 24.)   Such error, Plaintiff says, derives from the RFC determination.  As noted in *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996), Plaintiff argues that *Winfrey* (like the present case) illustrates the problems associated with an incomplete RFC assessment—*i.e.*, the limitations omitted from the RFC finding are also omitted from the hypothetical questions propounded to the vocational expert at step five of the analysis resulting in a defective determination as to Plaintiff's abilities to

---

[7]  The Court notes that upon review of the Commissioner's Response (ECF No. 16), there is nothing in that brief that seeks to refute the notion that the ALJ was picking and choosing evidence that best supporting a non-disability finding. *See Phillips v. Calhoun,* 956 F.2d 949, 953-54 (10th Cir. 1992) ("A litigant who fails to press a point . . . forfeits the point.")

do work in the existing economy.  The case-law provides that such defects taint the substantiality of the vocational expert's evidence. *Winfrey* 92 F.3d at 1024.

Plaintiff argues that the ALJ erred on account of the proffered hypothetical questions lacking the requisite precision as to all of Plaintiff's medical limitations.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")  The Court agrees.

To support this finding, the Court incorporates by reference the omitted limitations discussed with regard to the RFC analysis above.  Because of these omissions, and because the ALJ said that she afforded Dr. Neufeld's opinion "great weight" (but the ALJ failed to incorporate all of that opinion into the RFC), the Court finds that deficiencies exist in the record with regard to the hypothetical questions posed to the vocational expert.  This same reasoning equally applies to Drs. Hodge and Dr. Healey.  (R. 516-531.)

In sum, the ALJ's error can be traced back to deficiencies earlier in the RFC analysis.  The Court concludes that because the ALJ's omission(s) are material (*i.e.,* not precise as to the limitations proscribed by doctors' opinions that were afforded great weight), they are sufficient to taint the substantiality of the vocational expert's testimony. *See Hargis*, 945 F.2d at 1492.  Since the evidence is tainted by the omissions, substantial evidence is lacking in this case for the ALJ to have made the correct determination as to Plaintiff's claim to disability benefits. The Court finds that remand is also required to resolve these deficiencies.

18

### C.     Harmless Error

Finally, it is worth addressing the fact that Commissioner appears to argue that harmless error doctrine applies in this case.[8]

Courts apply harmless error cautiously in the administrative review setting. *Fischer-Ross.*, 431 F.3d at 733.  An error is only harmless when the Court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34.  Here, the Court has no confidence that the factual deficiencies addressed in this Order could be resolved another way because the deficiencies are critical omissions that track throughout the ALJ decision, constituting error that taints both the RFC and the questions propounded to the vocational expert.

Given that the ALJ gave considerable weight to the relevant opinions—and then failed to provide the vocational expert with the precise limitations—the ALJ's error is anything but harmless.  Indeed, the Court finds this type of error is more toward the significant end of the spectrum given the weight afforded to both Dr. Neufeld and Dr. Hodge in the ALJ decision, respectively.

---

[8]  The harmless error point is cited both preemptively by Plaintiff (ECF No. 17 at 24) and in the Commissioner's Response.  (ECF No. 20 at 19, 23, 25.)  It is further noted at the end of the Response brief, the  by Commissioner tacitly notes in the alternative that "the Court should not remand for an award of benefits, even if it determined that the ALJ lacked substantial evidence for his decision, because the appropriate remedy is remand for further consideration." *INS v. Ventura*, 537 U.S. 12, 16 (2002); *Krylov v. Holder*, 407 F.App'x 290, 295 (10th Cir. 2011) (unpublished) (noting "we are constrained to remand for additional findings").  While the Court does not agree with the Commissioner on harmless error doctrine, the Court does agree that this case is one that only warrants remand for further consideration by the ALJ to address the deficiencies stated in this Order.

### D.      Remaining Arguments

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings.  Because the Court finds that the ALJ's RFC was not supported by substantial evidence and that this error alone requires remand, it need not address the other arguments raised by Plaintiff—particularly in circumstances where there is errors in the decision whereby the ALJ has engaged in picking and choosing of evidence that supports a non-disabling finding without further analysis of the entire medical opinions of Dr. Neufeld and Dr. Hodge.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  It is entirely possible that, given the passage of time, the ALJ could arrive at the same conclusion and find that Plaintiff is not disabled.  The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 20th day of November, 2013.

BY THE COURT:

_____
William J. Martínez
United States District Judge